UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

MICHAEL ALBERT GUEBARA,                                                  Case No. 24-10164-t7

      Debtor.

JOHN HAYS,

      Plaintiff,

v.                                                                       Adv. Proc. 24-01014-t

MICHAEL ALBERT GUEBARA,

      Defendant.

## **OPINION**

Before the Court is Plaintiff's motion for partial summary judgment that a portion of his state court judgment against Defendant is nondischargeable under 11 U.S.C. § 523(a)(4). Plaintiff relies on issue preclusion to support his position. Defendant disputes that issue preclusion entitles Plaintiff to summary judgment, arguing that two important elements have not been satisfied. The matter has been briefed. The Court finds that the motion is not well taken and should be denied.

A.     Facts.[1]

The Court finds that there is no genuine dispute about the following facts:

---

[1] The Court takes judicial notice of its docket in this case and the State Court Action (defined below). *See Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010) ("We take judicial notice of court records in the underlying proceedings."); *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) ("[W]e may exercise our discretion to take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand.").

Defendant is the debtor and Plaintiff is a judgment creditor in the above-captioned bankruptcy case.

Prepetition, Plaintiff sued Defendant in the Twelfth Judicial District Court of the State of New Mexico, Otero County, styled *John Hays v. Mike Guebara*, case no. D-1215-CV-2020-00770 (the "State Court Action"). Plaintiff's complaint included counts for breach of contract, conversion, and unjust enrichment.[2] Defendant filed a counterclaim for replevin and damages.

The state court set a non-jury trial on the merits for October 11, 2022. Although Defendant's attorney, Mariano Torres, got notice of the trial setting, he did not tell Defendant about it, nor did he appear at trial. Plaintiff appeared in person and through counsel. The state court heard testimony, took evidence, and heard arguments of Plaintiff's counsel.

On October 31, 2022, the state court entered *Findings of Fact and Conclusions of Law Following Trial on the Merits held October 11, 2022 and Entry of Judgment against Defendant Mike Guebara and Dismissal of Counterclaim with Prejudice* (the "Judgment") against Defendant. The Judgment contained the following findings of fact:

> 1. The parties entered into a written contract on August 3, 2017 for the purchase of a Bobcat Skid Steer, model 763. The contract provided Defendant would sell to Plaintiff the Bobcat 763 for the sum of $8,500.00.
> 2. Plaintiff made an initial downpayment in cash towards the purchase of $4,250.00 to Defendant.
> 3. The written contract was modified orally by agreement to include additional items of personal property including a 1998 Dodge Truck, shipping container and tilt utility trailer.
> 4. The total of items purchased from Defendant by Plaintiff equaled $18,550.00 (not including the tilt trailer), which included $8,500 for the Bobcat 763, $8,250.00 for the 1998 Dodge truck and $1,800 for the shipping container.
> 5. Plaintiff also purchased a tilt trailer but it was later returned to Defendant and not included in the total above.

---

[2] The Court makes this finding based on pleadings filed in the State Court Action, none of which were provided to the Court by the parties. A party relying on a state court judgment for issue preclusion would be well advised to provide the Court with the state court pleadings.

6. Plaintiff made a total of $10,750.00 in cash payments to defendant leaving a balance on the modified contact [sic] of $7,800.00.

7. Following a dispute over the payments due, Defendant wrongfully repossessed the Bobcat 763 from Plaintiff. The Court finds the value of the Bobcat 763 to be $8,500.00. Defendant later sold the Bobcat, kept all of the funds from the sale and failed to account to Plaintiff on the balanced [sic] owed.

8. The balance due as of the time of the wrongful repossession of the Bobcat was $7,800.00. Defendant retained the benefit of the Bobcat thereby reducing the amount owed of $7,800 by $8,500 leaving Defendant owing Plaintiff $700.00.

9. The parties had an agreement for Plaintiff to provide cleaning services on property occupied by Defendant or Defendant's friends and family.

10. Defendant failed to pay Plaintiff for his services for cleaning and maintaining various properties occupied or controlled by Defendant or Defendant's friends and family in the amount of $22,950.00 as established by Plaintiff's testimony and admitted exhibits.

11. Defendant did not honor the parties' verbal agreement to offset the work performed by Plaintiff against the contract balance owed on the Bobcat, Dodge truck and the storage container.

12. Plaintiff had to rent a replacement Bobcat to complete a pending unrelated job. The rental cost was $566.42.

13. Unrelated to the purchase of the Bobcat 763, Plaintiff requested Defendant repair a second Bobcat owned by Plaintiff and the same was left at Defendant's property located at 7054 Highway 544/70.

14. Defendant never repaired the second Bobcat and Defendant wrongfully converted and later sold the second Bobcat owned by Plaintiff with a value of $5,000.00.

15. Plaintiff requested Defendant repair a 1996 Chevrolet Truck which needed engine work.

16. Plaintiff paid Defendant $400.00 to repair the truck. Defendant did not repair the truck, rather Defendant wrongfully converted and sold the 1996 Chevrolet truck owned by Plaintiff with a value of $3,500.00.

17. In addition to operating an equipment repair business, Defendant charged for storage of items located at the Highway 54/70 property.

18. Defendant failed to give Plaintiff any notice of his intent to sell the Bobcat 763, the second Bobcat or the 1996 Chevrolet truck.

19. The sale of Plaintiff's property was wrongful and not justified under the law.

20. Defendant wrongfully converted those items of personal property for his own use and keep [sic] the money from selling those items.

21. Plaintiff has suffered damages as a result of Defendant's conversion in the amount of $5,000.00 for the 2nd Bobcat and $3,500.00 for the 1996 Chevrolet truck.

22. Defendant's actions were intentional and willful.

The Judgment included an award of $22,950[3] for services provided to Defendant, $700 for offset of the repossessed Bobcat, $5,000 for wrongful conversion of the second Bobcat, $3,500 for wrongful conversion of the 1996 Chevrolet truck, and $566 for rental costs. The Judgment also included punitive damages of $25,500 for the wrongful conversions. Finally, the Judgment includes $11,819 in attorney fees. The total award was $70,035, which accrues interest at 15% per year.

Defendant filed this bankruptcy case on February 22, 2024. Plaintiff timely filed a complaint for nondischargeability and denial of discharge, commencing this proceeding. In his complaint, Plaintiff argues that a portion of Judgment is nondischargeable under § 523(a)(4).[4]

Plaintiff filed a motion for partial summary judgment on his § 523(a)(4) claim, to which Defendant timely responded. Plaintiff elected not to reply. The issue of discharge under § 727 is not currently before the Court.

B.     Summary Judgment Standards.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056. "[T]he substantive law [governing the dispute] will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A dispute is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmoving party, and a

---

[3] All dollar amounts are rounded to the nearest whole dollar unless otherwise indicated.
[4] Unless otherwise indicated, all statutory references are to 11 U.S.C.

fact is material when it might affect the outcome of the suit under the governing substantive law." *Bird v. W. Valley City*, 832 F.3d 1188, 1199 (10th Cir. 2016) (citing *Anderson*, 477 U.S. at 248).

The "party seeking summary judgment always bears the initial responsibility of informing the . . . court of the basis for its motion, and identifying [the portions of the record that] demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323.

C.         The Judgment is Entitled to Full Faith and Credit Under 28 U.S.C. § 1738.

State court judgments are binding in bankruptcy court to the same extent they are in state court. "The Full Faith and Credit Act, 28 U.S.C. § 1738, requires a federal court to give the same preclusive effect to a state-court judgment that the judgment would be given in the courts of the state in which the judgment was rendered." *In re Crespin*, 551 B.R. 886, 898-9 (Bankr. D.N.M. 2016) (citing *Havens v. Johnson,* 783 F.3d 776, 785, n.6 (10th Cir. 2015)). Thus, the amount of Defendant's debt to Plaintiff is established by the Judgment and is not in question. Rather, the only issue is how much of that judgment debt, if any, is nondischargeable under 11 U.S.C. § 523(a)(4).

D.         Nondischargeability under § 523(a)(4).

Section 523(a)(4) prohibits the discharge of a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." To prevail in his § 523(a)(4) claim, Plaintiff must prove the requisite facts by a preponderance of evidence. *Grogan v. Garner*, 498 U.S. 279, 287-8 (1991) (preponderance standard governs applicability of all discharge exceptions). There is no allegation that Defendant acted in a fiduciary capacity, so Plaintiff must prove that Defendant committed embezzlement or larceny.

Embezzlement under § 523(a)(4) is "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *In re Sun*, 535 B.R. 358, 367 (10th Cir. BAP 2015) (quoting *In re Wallace,* 840 F.2d 762, 765 (10th Cir 1988)).

*See also In re Patel*, 551 B.R. 488, 495 (Bankr. D.N.M. 2016) (citing *In re Bucci*, 493 F.3d 635, 644 (6th Cir. 2007), the court held that the elements of embezzlement under § 523(a)(4) are: (1) a creditor entrusted his or her property to the debtor; (2) the debtor appropriated the property for a use other than the use for which it was entrusted; and (3) the circumstances indicate fraud.).

Larceny under § 523(a)(4) is "the fraudulent and wrongful taking and carrying away of the property of another with intent to convert it to the taker's use and with intent to permanently deprive the owner of such property." *In re Dorado*, 400 B.R. 304, 309-10 (Bankr. D.N.M. 2008) (quoting *In re Tilley,* 286 B.R. 782, 789 (Bankr. D. Colo. 2002)). It differs from embezzlement in that the initial acquisition of the property is unlawful. *Dorado*, 400 B.R. at 309.

Debts for conversion are not listed in § 523(a)(4).[5] Under New Mexico law, conversion is "(1) the unlawful exercise of dominion and control over personal property belonging to another in exclusion or defiance of the owner's rights, or (2) acts constituting an unauthorized and injurious use of another's property." *Muncey v. Eyeglass World, LLC,* 289 P.3d 1255, 1262 (N.M. App. 2012) (citing *Nosker v. Trinity Land Co.*, 107 N.M. 333, 337-38 (Ct. App. 1988)). "The intention required is an intention merely to exercise a dominion or control over the chattel which in fact seriously interferes with the right of another to control it." Restatement (Second) of Torts § 224 (1965).

Tortious conversion, as opposed to criminal conversion, does not depend on the converter's culpable state of mind. *See, e.g., Millennium Financial Services, L.L.C. v. Thole*, 74 P.3d 57, 64 (Kan. App. 2003) (under Kansas law, defendant's state of mind is irrelevant to the issue of

---

[5] Certain debts based on conversion can be nondischargeable under § 523(a)(6) if the conversion was willful and malicious. *See, e.g., In re Deerman*, 482 B.R. 344, 370 (Bankr. D.N.M. 2012) (willful and malicious conversion can support a finding on nondischargeability under 11 U.S.C. 523(a)(6))(citing cases).

conversion); *Schrenker v. State*, 919 N.E.2d 1188, 1194 (Ind. App. 2010) (under Indiana law, *mens rea* is not an element of tortious conversion); *United Tactical Systems, LLC v. Real Action Paintball, Inc.*, 143 F. Supp. 3d 982, 1014 (N.D. Cal. 2015) (same, applying Indiana law); *DeBellis v. Woodit*, 2024 WL 1140800, at *4 (D. Maryland) (under Maryland law, defendant can commit conversion even though he or she acted in good faith and lacked any consciousness of wrongdoing); *In re Newman*, 2022 WL 2100905, at *1 (9th Cir. BAP) (under California law, culpable state of mind is not required); *U.S. Diamond & Gold v. Julius Klein Diamonds LLC*, 2008 WL 5054727, at *2 (S.D. Ohio) (state of mind is not an element of a claim of conversion); *Sauls v. Whitman*, 42 P.2d 275, 280 (Okla. 1935) ("wrongful" conversion depends not so much on the state of mind as upon the acts done); *In re Kern*, 567 B.R. 17, 36 (Bankr. E.D.N.Y. 2017) (tort claim for conversion does not require a culpable state of mind).

D.  <u>Plaintiff's Issue Preclusion Argument Fails</u>.

Historically, claim and issue preclusion were "collectively referred to as 'res judicata.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). In modern jurisprudence, courts have moved away from the phrase res judicata, in favor of clearer terminology to distinguish claim preclusion (the effect of a prior judgment in foreclosing successive litigation of the very same claim) from issue preclusion (the effect of a prior judgment in foreclosing successive litigation of an essential issue of fact or law actually litigated and resolved). *New Hampshire v. Maine*, 532 U.S. 742, 748–49 (2001) (distinguishing claim and issue preclusion); *Taylor*, 553 U.S. at 892 n.5 (claim and issue preclusion "have replaced a more confusing lexicon").

Plaintiff argues that the Judgment determined that Defendant committed embezzlement and larceny and that, because of issue preclusion, Defendant cannot relitigate those issues. This is a difficult argument because the Judgment is based on conversion, not embezzlement or larceny.

To prevail, Plaintiff has to show that conversion is essentially interchangeable with embezzlement and larceny.

28 U.S.C. § 1738 requires "a federal court to refer to the preclusion law of the [s]tate in which judgment was rendered" and to give any judgment the same preclusive effect it would be given by a court in that state. *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985). In New Mexico, the elements of issue preclusion are: 1) The parties in the second suit must be the same or in privity with the parties in the first suit; 2) The causes of action must be different; 3) The issue or fact must have been actually litigated in the first case; and 4) The issue must have been necessarily determined in that case. *Blea v. Sandoval,* 107 N.M. 554, 559 (N.M. App. 1988). "If the party asserting issue preclusion establishes these four elements, the burden shifts to the opposing party to demonstrate that he or she was not afforded a fair opportunity to litigate the issue in the earlier proceeding." *In re Lopez,* 2022 WL 1160607, *2 (Bankr. D. N.M.).

Here, the parties to this proceeding are the same as those in the State Court Action, so the first element is met. Likewise, the nondischargeability proceeding before the Court is not the same as the state law claims litigated in the State Court Action, so the second element of issue preclusion in New Mexico is met.

To satisfy the third requirement for issue preclusion, Plaintiff must demonstrate that the issue(s) to be precluded were "actually litigated" in the State Court Action. An issue is "actually litigated" when it "is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined[.]" Restatement (Second) of Judgments § 27 cmt. D. (1982); *see also Blea,* 107 N.M. at 557-8 (relying on the Restatement (Second) of Judgments § 27 to define issue preclusion).

This requirement has not been met. The state court complaint asserted claims for breach of contract, unjust enrichment, and conversion. Likewise, the Judgment includes findings of, and a money judgment for, breach of contract and conversion. Neither mentions embezzlement or larceny. Plaintiff's attempts to equate conversion with embezzlement and/or larceny fail. Under New Mexico law, conversion does not require a finding of fraud or fraudulent intent, while embezzlement and larceny under § 523(a)(4) do. *See, e.g., In re Bratt*, 491 B.R. 572, 577 (Bankr. D. Kan. 2013) (conversion is not an exception to discharge under § 523(a)(4) and is not the same as embezzlement or larceny). The Judgment never mentions fraud or fraudulent intent. The closest it comes is the finding that "Defendant's actions were intentional and willful." However, the Judgment does not make clear which actions are referred to, nor can the Court tell whether the complaint alleged intentional and willful conduct with regard to conversion. In any event, intentional and/or willful actions are not the same as actions taken with fraudulent intent.

Because the Judgment is based on state law conversion claims rather than embezzlement or larceny, the third requirement of issue preclusion has not been met.

Likewise, the fourth element of issue preclusion has not been met. Plaintiff did not plead, and the state court made no ruling on, embezzlement or larceny. Neither were determined at all in the Judgment, let alone necessarily determined.

G.  Issue Preclusion is an Equitable Doctrine.

In New Mexico, "[w]hether the doctrine [of issue preclusion] should be applied is within the court's discretion." *Shovelin v. Central New Mexico Elec. Co-op., Inc.*, 115 N.M. 293, 299 (S. Ct. 1993) (citing *Silva v. State*, 106 N.M. 472, 476 (S. Ct. 1987)). Issue preclusion "is not mandated in the Constitution or by statute. Rather, it is the product of court precedent based on a court's exercise of its equitable powers." *In re Giron,* 610 B.R. 670, 677 (Bankr. D. N.M. 2019) (citing

*Acacia Villa v. U.S.,* 24 Cl. Ct. 445, 448 (Cl. Ct. 1991). Thus, "[e]ven when the elements of collateral estoppel are present, the decision whether to apply the doctrine is within the discretion of the trial court." *Id.* (citing *U.S. v. Kaytso,* 868 F.3d 1020, 1022 (9th Cir 1988) and *Arapahoe County Public Airport Authority v. F.A.A.,* 242 F.3d 1213, 1220 (10th Cir. 2001)).

Here, even if issue preclusion was available (and the Court holds that it is not), the Court would exercise its discretion and decline to apply the doctrine. Getting sued for conversion is one thing; getting sued for stealing is something else entirely. If Plaintiff wanted a judgment against Defendant for embezzlement or larceny, he should have stated those claims clearly in the State Court Action. Plaintiff cannot change conversion into embezzlement or larceny via issue preclusion.

## Conclusion

Plaintiff's Judgment is entitled to full faith and credit. However, issue preclusion cannot be used to prove that the judgment debt is nondischargeable, as Plaintiff did not plead, and the state court did not rule on, embezzlement or larceny. Conversion claims, which *were* pled and ruled on, are not fungible with embezzlement or larceny claims. A separate order denying Plaintiff's motion for partial summary judgment will be entered.

_____
Hon. David T. Thuma
United States Bankruptcy Court

Entered: August 9, 2024
Copies to: counsel of record